IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SUSAN KRUGMAN-KADI,

    Plaintiff,

v.                                                              CASE NO. 1:13-cv-204-MW-GRJ

WELLS FARGO BANK, N.A. et al.,

    Defendants.

_____ /

## **REPORT AND RECOMMENDATION**

Pending before the Court is Doc. 4, Plaintiff's "Motion to Deny Notice of Removal," which the Court construes as a Motion to Remand. Defendant Wells Fargo, N.A., has responded to the Motion. Doc. 11. Although Plaintiff did not obtain leave of court, as required by N.D. Fla. Loc. R. 7.1(C)(2), Plaintiff filed a reply.[1] Doc. 12. Although Plaintiff did not seek leave of Court to file the reply – as required by N.D. Fla. Loc. R. 7.1(C)(2) – because Plaintiff is proceeding *pro se*, the Court will consider the arguments in Plaintiff's reply. For the reasons discussed below, it is recommended that Plaintiff's motion to remand should be **DENIED**.

## **I. BACKGROUND**

On September 9, 2013 Plaintiff filed a quiet title action in the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, Florida.[2] In the complaint, she

---

[1] In her Reply, Plaintiff also raises an issue with regard to the disqualification of Defendant's counsel due to a conflict of interest. Because there is no motion pending before the Court requesting disqualification of Defendant's counsel, the Court will not address the issue. If Plaintiff wishes to move for disqualification, she must file a motion with an incorporated memorandum of law.

[2] Case number 2013-CA-4144.

alleges that she obtained the real property in question pursuant to her divorce from her ex-husband, Eilon Krugman-Kadi. She alleges that a warranty deed was recorded purporting to transfer ownership of the subject property from herself back to her ex-husband. Shortly thereafter a mortgage on the property was recorded in favor of Wells Fargo. Plaintiff alleges that she never signed or acknowledged the warranty deed, and that it was forged. She seeks to have the mortgage declared null and void, and to have title quieted in her name. After Defendant was served with a summons on September 12, 2013, Defendant removed the state court action on October 11, 2013.

## II. DISCUSSION

A defendant may remove a civil case from state to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). Defendant has removed this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1332(a) the "districts courts shall have original jurisdiction of all civil cases where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the civil action is between "citizens of different states."

As the party seeking removal, Defendant bears the burden of proving that proper federal jurisdiction exists. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)(*citing Williams v Best Buy Co.,* 269 F. 3d 1316, 1319-20 (11th Cir. 2001)("A removing defendant bears the burden of proving proper federal jurisdiction."). In cases, as here, in which a plaintiff has not pleaded a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy "can more likely than not be satisfied." *Kirkland v. Midland Mortg. Co.*, 243 F. 3d 1277, 1281 n. 5 (11th Cir. 2001). A defendant must file the notice of removal

within 30 days of receipt, through service or otherwise, of a copy of the initial pleading. 28 U.S.C. § 1446(b). Further, all defendants who have been properly joined and served must join in or consent to the removal of the action. 28 U.S.C. § 1446(2)(A).

For cases filed after January 6, 2012, the recently amended 28 U.S.C. § 1446(c)(2) controls.[3] This section provides that if the initial pleading seeks nonmonetary relief  "the notice of removal may assert the amount in controversy." 28 U.S.C. § 1446(c)(2)(A)(I).

Where the case is removed within 30 days of the Defendant being served with the state court complaint "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of evidence standard," and [d]efendants may introduce their own affidavits, declarations ... " or "other summary judgment type evidence that may reveal that the amount in controversy is satisfied." *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 754-55 (11th Cir. 2010)(internal quotations and citations omitted).  Moreover – as is the case here – district courts may consider evidence filed after the notice of removal in assessing removal jurisdiction, so long as the subsequently filed evidence is relevant to the state of affairs at the time of removal. *Sierminski v Transouth Fin. Corp.*, 216 F. 3d 945, 949 (11th Cir. 2000). A defendant may obtain removal of a case to federal court by relying on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F. 3d at 754.

---

[3] *See,* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 762 (2011)(enacted December 7, 2011, and taking effect upon the expiration of the 30-day period following enactment).

With these principles in mind the Court will turn to whether the removal was proper and timely. With regard to timeliness, there is no issue that the case was removed within the required 30 day time period. The docket reflects that Defendant was served on September 12, 2013, and the notice of removal was filed twenty-nine days later, on October 11, 2013. Although Plaintiff mentioned in her complaint four defendants – SouthTrust Bank, Wachovia Bank N.A., Wachovia Bank, FSB and/or Wachovia Mortgage Corporation[4] – only one summons was issued naming Wells Fargo, N.A. ("Wells Fargo") and only Wells Fargo was served with the summons and complaint. As Defendant explains in its Notice of Removal Wells Fargo, N.A. is the successor by merger to SouthTrust Bank, Wachovia Bank. N.A., Wachovia Mortgage, FSB and Wachovia Mortgage Corporation. In short , Wells Fargo is the only Defendant in this case and thus consent from other defendants was not required.

Turning next to whether there is diversity of citizenship, Plaintiff lists her address in her complaint as a Gainesville, Florida address. Defendant alleges in its Notice Removal – and Plaintiff does not say otherwise – that Plaintiff is a citizen of Florida for diversity purposes.

With regard to the citizenship of Wells Fargo it alleges in its Notice of Removal that it is a citizen of South Dakota because as a national bank it is a citizen of the state where it is "located." 28 U.S.C. § 1348. A national bank is located in the "State designated in its articles of association as its main office." *Wachovia Bank, N.A., v.*

---

[4] Plaintiff named "Wachovia Mortgage" in her complaint, but Defendant alleges that no such entity exists. Defendant suggests that Plaintiff may have intended to name either Wachovia Bank, FSB or Wachovia Mortgage Corporation, and thus Defendants have provided information to indicate that both entities have merged completely into Wells Fargo, N.A.

*Schmidt*, 546 U.S. 303, 318 (2006). As evidence that Defendant's headquarters is located in South Dakota, Defendant points to FDIC and OCC records, copies of which are attached to the Notice of Removal, (Doc. 1, Exs. F & G) and a number of cases in which other courts have concluded that Wells Fargo is a citizen of South Dakota because that is where its main office is located. *See, e.g. Wells Fargo Bank, N.A. v. WMR e-Pin, LLC,* 653 F. 3d 702, 705, 709-10 (8th Cir. 2011); *Nguyen v Wells Fargo Bank, N.A.,* 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010).

In her motion, Plaintiff points to a document filed by Wells Fargo with the Florida Secretary of State in 1995 representing that Wells Fargo's principal place of business is in San Francisco, California, and not South Dakota. (Doc. 4, Ex. B.) Although this document lists "principal address" and not headquarters – and was filed in 1995 – the Court need not resolve the issue of whether Wells Fargo is a citizen of South Dakota (which appears to be the case) or a citizen of California, as Plaintiff suggests, because in either case Wells Fargo is a citizen of a state other than Florida and thus there is complete diversity of citizenship between the Plaintiff and the Defendant.

Lastly, the Court must determine whether Plaintiff has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000. Plaintiff alleges in its Notice of Removal that the amount in controversy is in excess of $75,000 because Plaintiff seeks a judgment invalidating a mortgage lien in the principal amount of $360,000.00. Plaintiff, on the other hand, suggests that the amount in controversy is less than $100.00, the amount paid for the property at the state foreclosure sale. While the issue would appear fairly straightforward courts have taken differing views as to the appropriate measurement for determining the amount in

controversy in an action to quiet title.

One view is that where a complaint seeks to invalidate a loan secured by a mortgage the amount in controversy is the loan amount. *See, e.g. Property Choice Group, Inc. v. LaSalle Bank National Association*, no. 8-12-cv-1042-T-23MAP, 2012 WL 2568138 (M.D. Fla. July 2, 2012)("[plaintiff] seeks to invalidate a $272,000 mortgage. The value of the mortgage at issue, and thus the amount in controversy, exceeds $75,000."); *McKenna v. Wells Fargo Bank,* N.A., 693 F. 3d 207, 212 (1st Cir. 2012)("[n]umerous [district] courts have held that, where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount."); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010); *Kirby v. Bank of America*, No. 2:09cv182-DCB-JMR, 2010 WL 114201 (S. D. Miss. Jan. 7, 2010). A second approach focuses upon the "unpaid principal balance on the note as of the date of removal. *McKenna*, 693 F. 3d at 212 (collecting cases). A third approach is to look to the fair market value of the property. *See, e.g. Reyes v Wells Fargo Bank, N.A.,* No. C10-01667, 2010 WL 2629785, at *5-6 (N.D. Cal. June 29, 2010).

"When a plaintiff seeks injunctive or declaratory relief, . . . 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 714 (M.D. Fla. 2007) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, Inc.*, 329 F.3d 805, 807 (11th Cir. 2003)). To determine from the Plaintiff's perspective the monetary value of this case – and the proper approach to be taken by the Court – a review of the nature of Plaintiff's claim in this case is necessary.

Although the parties refer to the case as a "quiet title action" upon closer

inspection it is not. In a typical quiet title action the plaintiff holds title to the property and seeks to quiet title by removing a lien or mortgage on the property. Presumably that is what Plaintiff is requesting in her complaint. In her complaint Plaintiff requests the Court to declare Defendant's mortgage null and void, cancel the mortgage of record and quiet title to property owned by Plaintiff and against Defendant and all other persons claiming under Defendants. Doc. 1, Ex. I. The problem is that Wells Fargo does not hold a mortgage on the property and does not hold title to the property. Rather, as disclosed in the answer and exhibits to the answer filed by Defendant, Doc. 8, the property was foreclosed in case no. 01-2008-CA-001731 in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida and a certificate of title was recorded on December 12, 2012. Any mortgage interest of Wells Fargo was extinguished when the property was foreclosed. On June 10, 2013 Wells Fargo conveyed the property to the Federal Home Loan Mortgage Corporation by a deed recorded on June 10, 2013. Thus, Wells Fargo does not even own the property nor is there is any mortgage on the property. Simply put, there is no mortgage to cancel and no title to quiet.

Because the Plaintiff cannot get the property back from Wells Fargo since Wells Fargo does not have title to the property, the fair market value of the property is not the proper barometer of the amount in controversy in this case. Moreover, because there is no mortgage to cancel – since Wells Fargo no longer holds a mortgage – the face value of the loan rule also would not be an appropriate criteria for determining the amount in controversy. The unpaid principal balance on the mortgage as of the date of removal is the more appropriate criteria to utilize. The total indebtedness owed on the mortgage at the time of the foreclosure judgment is the sum of $487,459.43. Doc. 8, Ex.

C. That is the amount of indebtedness the state court determined was ultimately owed to Wells Fargo. Assuming Plaintiff's ultimate goal in this case is to obtain title to the property free and clear of the allegedly fraudulent mortgage – and undo the foreclosure sale[5] – Plaintiff would receive property without a lien on the property thus eliminating a debt in the amount of $487,459.43, a sum well in excess of $75,000.

The Court, however, need not decide which approach to follow because even if the other approaches were utilized the amount in controversy is well in excess of $75,000. For example, if the Court used the face value of the loan rule the amount in controversy would be $360,000, also well in excess of the $75,000 threshold. Even if the value of the property was used the amount in controversy would still be in excess of $75,000. The value of the property is not $100.00 – as Plaintiff suggests. Rather, $100.00 was the amount of Wells Fargo's credit bid at the foreclosure sale. Wells Fargo was authorized to bid up to $487,459.43, the total amount of its indebtedness. When a judgment holder, like Wells Fargo, bids at a foreclosure sale it does not actually pay any monies but instead is given a credit up to the total amount of its judgment. Thus, the $100 credit bid has nothing to do with the value of the property. Although, Wells Fargo does not mention the value of the property, Wells Fargo submitted the final judgment of foreclosure, which includes the amount of outstanding property taxes. Doc. 8. Ex. C. As reflected in the final judgment of foreclosure the outstanding property taxes were $12,722.47, an amount that even if it represents three years of unpaid taxes, is a sum representing taxes levied on a property valued at well in

---

[5] The Court recognizes that under the *Rooker-Feldman* doctrine the Court does not have the authority to overturn and vacate the state court foreclosure judgment.

excess of $75,000.[6] Therefore, even if the Court was to use the value of the property to determine the amount in controversy, the property has a value well in excess of $75,000, which is more than sufficient to meet the jurisdictional threshold.

Accordingly, the undersigned concludes that Defendant has met its burden of demonstrating by a preponderance of the evidence that the amount in controversy involved in this action exceeds the $75,000 threshold necessary to establish diversity jurisdiction under 28 U.S.C. § 1332.

### III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion To Remand (Doc. 4) should be **DENIED.**

**IN CHAMBERS,** at Gainesville, Florida this 6th day of December, 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[6] Assuming the outstanding property taxes of $12,722.47, represents three years of unpaid taxes the amount of tax per year would be approximately 4240.82. Alachua County millage rates generally for property in the City of Gainesville have varied during the relevant time frame from 23-24 mills. Utilizing the higher millage rate of 24 would equate to property valued by te property appraiser at approximately $176,000. *See,* http://www.acpafl.or/millage.asp